FILED

2023 Sep-07  AM 09:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WENDY WILLIAMS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **CIVIL ACTION CASE NUMBER: (CLASS ACTION)** |
| **v.** | ) ) | |
| **MITCHELL GROCERY CORP.,** | ) ) | |
| **Defendant.** | ) | |

### INDIVIDUAL AND CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Wendy Williams ("Plaintiff") files this Individual and Class Action Complaint against Defendant, Mitchell Grocery Corp. d/b/a Food Giant ("Food Giant" or "Mitchell"), a domestic corporation, and alleges as follows:

### INTRODUCTION

1. Plaintiff brings this action individually and on behalf of a class of similarly situated persons for compensatory and statutory damages as a result of Mitchell marketing its bakery goods in violation of federal and State of Alabama food marketing regulations. Plaintiff further makes this claim against Mitchell for breach of Mitchell's express and implied warranties, unjust enrichment and breach of implied agreement of good faith.

2. Plaintiff, Wendy Williams, is a resident citizen of Jefferson County, Alabama and was so at the time of the purchase covered herein. Plaintiff shops from time to time at Defendant's grocery store in the Birmingham metropolitan area of Jefferson County. Within the statutory period, Plaintiff visited the Defendant's Food Giant location at 145 Hueytown Plaza, Hueytown, Alabama 35023 in Jefferson County, Alabama and

purchased several items including the products in question, prepackaged containers of bakery goods from the Mitchell bakery department. Plaintiff naturally assumed and expected that the Defendant's bakery goods were being baked, packaged and sold in conformity with legal requirements. After the purchase, Plaintiff was informed by a family member that the bakery items lacked nutrition labeling; she subsequently learned that such was in violation of the Food & Drug Administration's (FDA) and the State of Alabama's clear requirements to place Nutrition Labels on its bakery products.

3. Mitchell is an Alabama corporation and owns approximately 40 retail grocery stores throughout Alabama, Florida and Mississippi which do business as Food Giant, Piggly Wiggly and Foodland. Mitchell employs approximately 500 employees and distributes grocery goods, including bakery products, to its retail stores.

## JURISDICTION AND VENUE

4. This court has original jurisdiction over this civil action under the Class Action Fairness Act of 2005. The amount in controversy exceeds the sum or value of Five Million Dollars ($5,000,000), exclusive of interest and costs, and there is minimal diversity because named Plaintiff and certain members of the class are citizens of a different state than Defendant, as required by 28 U.S.C. § 1332(d)(2). Defendant's principal place of business is located in the State of Alabama.

5. Venue is proper in this judicial district because Defendant conducts substantial business in this district and the events giving rise to Plaintiff's claims occurred in this district, since the unlawful conduct complained of herein occurred in this district.[1]

---

[1] See 28 U.S.C. § 1332(d)(2)(A)-(C); *Lowery v. Ala. Power Co.,* 483 F.3d 1184, 1194 18-24 (11th Cir. 2007); *Frederick v. Hartford Underwriters Ins. Co.,* 683 F.3d 1242 (10th Cir. 2012); *Kerbs v. Safeco Ins. Co. of Ill.,* No. 11-cv-1642, 2011 WL 6012497, at *2 (W.D. Wash. Dec. 1, 2011); *Keeling v. Esurance Ins. Co.,* (660 F.3d 273 (7th Cir. 2011).

## STATEMENT OF FACTS

6.   Plaintiff's individual and her causes of action on behalf of all others in Alabama, Mississippi and Florida who are similarly situated are based on Mitchell violating federal and  Alabama food law and regulations in selling its bakery goods without Mitchell placing the required Nutrition Labeling on its bakery goods prior to sale.

7.   Among Plaintiff's purchases on said occasion were:

- Ma's Yeast Rolls (Exhibits A and B)

- Cornbread (Exhibits C and D)

8.   The Food and Drug Administration ("FDA") is responsible for assuring that foods sold in the United States are safe, wholesome and properly labeled.  This applies to foods produced domestically, as well as foods from foreign countries.  The Federal Food, Drug and Cosmetic Act ("FD&C Act") and the Fair Packaging and Labeling Act are the federal laws governing food products under FDA's jurisdiction.  Mitchell, for the sake of the public, is required to market its bakery goods in compliance with FDA regulations.

9.   The Nutrition Labeling and Education Act ("NLEA"), which amended the FD&C Act, requires foods to bear food labeling that conforms to the nutrient content claims and certain health messages to comply with certain specifics (see CFR 101.1 et seq). Alabama has specifically adopted as law in Alabama the complete federal law, including CFR references and FDA Regulations regarding food merchandising.

10.   More specific to the present case, are the requirements for Mitchell and other grocery stores to have adhered to the FDA's requirements relative to Nutrition Labeling.

11.    According to the FDA's Guidance to Industry (2009):

(G1.)    **Where should the Nutrition Facts label be placed on food packages?**

*Answer:*    The Nutrition Facts label may be placed together with the ingredient list and the name and address (name and address of the manufacturer, packer, or distributor) on the PDP. These three label statements also may be placed on the information panel (the label panel adjacent to the right of the PDP, or, if there is insufficient space on the adjacent panel, on the next adjacent panel to the right). On packages with insufficient area on the PDP and information panel, the Nutrition Facts label may be placed on any alternate panel that can be seen by the consumer, 21 CFR 101.2(b) & (e) & 101.9(i)

(G2.)    **Is it necessary to use a nutrition display with a box shape on a round package?**

*Answer:* Yes. Even when using the tabular display, the nutrition information must be set off in a box. 21 CFR 101.9(d)(1)(i)

(G3.)    **Can the product name be placed within the Nutrition Facts label?**

*Answer:* No. The name may be placed above the box that encloses the nutrition information. 21 CFR 101.9(c) & (d)

(G4.)    **Can the Nutrition Facts label be oriented perpendicularly as opposed to parallel, to the base of the package?**

*Answer:* Yes. There is no requirement that any information, other than the net quantity of contents and statement of identity, be printed parallel to the base of the package. However, FDA urges manufacturers to strive for consistency of presentation of nutrition information in the market and to place the Nutrition Facts label so that it is readily observable and legible to the consumer at the point of purchase.

(G5.)    **Is a break in the vertical alignment allowed with the standard format?**

**Answer:** Yes.  The vertical format may be broken in either of the following ways: (1) placement of the footnote to the right of the panel as shown in the example in 21 CFR 101.9(d)(11) or (2) all vitamins and minerals that are listed voluntarily (i.e., after iron) may be moved to the top of the panel along with the footnote.  21 CFR 101.9(d)(11)

12.  Hence, one can readily ascertain that the labeling of food products is stringently required and meticulously stated by the federal government.  Such is not voluntary; it is legally required.  To maintain the health and wellness of Americans, customary and necessary nutrition labeling has been a vital part of food merchandising in the United States since 1994.

13.  The FDA recognizes that health and wellness of all Americans depends on proper knowledge of nutrition.  The FDA and the federal Center for Disease Control (CDC) have been in the forefront of education of proper nutrition.  Never before have Americans been so attuned to proper eating habits defined by less sodium, lower fat consumption, less sugar and lower carbohydrates.  The Nutrition Label is now vital more than ever, for all Americans to know what a product contains.[2]

14.  Until recently, the nutrition panel that has been required on food packages was as set out in the format below (left side).  That labeling has recently changed.  Mitchell has been given substantial advance notice of a change in the nutrition labeling to be affixed to its food products.[3]  The following is a side-by-side comparison of the prior format label (left side) to the January 1, 2020 label requirements (right side):[4]

---

[2] http://www.letseathealthier.com/why-is-nutrition-important.html
[3] https://www.federalregister.gov/documents/2016/11/25/2016-28333/uniform-compliance-date-for-food-labeling-regulations

[4] (food/food – labeling – nutrition/industry – resources – changes – nutrition – facts – label)



15. Despite being aware of nutrition labeling requirements, Mitchell has continued to avoid placing nutrition labels on its bakery goods. The manner that Mitchell places their bakery products for sale is important in defining its responsibility to its consumers. Mitchell has not to date placed either the old nutrition label or the new label on their subject bakery goods.

16. Plaintiff alleges that Mitchell, upon information and belief, receives the dough for its bakery goods in shipments either from a third-party vendor or from the Defendant-owned central location. Each Mitchell store then bakes the goods, places them in plastic see-through containers upon which is sometimes affixed the ingredient list and name of the bakery goods on the PDP (front) per the above FDA requirement. As stated above, the ingredients are to be listed in descending order of predominance of weight, meaning the ingredient weighing the most is listed first and the ingredient weighing least is listed last. *See* 21 CFR 101.4(a).

17.  Regardless, Mitchell is then required by law to affix the nutrition label (noted in 14., above) to the reverse of the bakery good's container.  But Mitchell does not do that, thus violating the applicable FDA regulation and placing their customers at risk, in violation of 21 U.S.C. § 343.

18.  While there are a few exemptions to nutrition labeling on some food items, Mitchell is not exempt respecting their bakery goods.  The applicable legal requirement is codified under federal law at 21 U.S.C. 101.9(a), CFR 101.9(a):

> Nutrition information relating to food shall be provided for all products intended for human consumption and offered for sale unless an exemption is provided for the product in paragraph (j) of this section.

19. One limited exemption above are pure bakeries.  Should Mitchell have expected to date to somehow fall under that exemption, Mitchell is mistaken.  The concept under the applicable FDA regulation generally is that a typical bakery produces such things as cakes, doughnuts, muffins, pies and bread.  These bakeries form their goods on site from scratch.  Generally, only such goods that are prepared from scratch on-site are exempt.  If bakery goods are merely baked and packaged, then they are not exempt and the required Nutrition Labeling is to be affixed.

20.  In addition, locations that prepare their bakery goods from scratch and/or which sell its products for immediate human consumption as in a restaurant or a school lunchroom are exempt.  Those ready-to-eat establishments are clarified by the FDA as follows:

> The following foods are exempt from this section or are subject to special labeling requirements:
>
> (i)    Served in restaurants, Provided, That the food bears no nutrition claims or other nutrition information in any context on the label or in labeling

> or advertising.  Claims or other nutrition information subject the food to the provisions of this section;
>
> (ii)    Served in other establishments in which food is served for immediate human consumption (e.g., institutional food service establishments, such as schools, hospitals, and cafeterias; transportation carriers, such as trains and airplanes; bakeries; food service vendors, such as lunch wagons, ice cream shops, mall cookie counters, vending machines, and sidewalk carts where foods are generally consumed immediately where purchased or while the consumer is walking away, including similar foods sold from convenience stores; and food delivery systems or establishments where ready-to-eat foods are delivered to homes or offices), Provided, That the food bears no nutrition claims or other nutrition information in any context on the label or in labeling or advertising, except as provided in § 101.8(c).  Claims or other nutrition information, except as provided in § 101.8(c), subject the food to the provisions of this section.  21 CFR 101.9(j)(2) & (3)

21.  To further clarify the requirement upon Mitchell as mentioned above, the FDA first authored its <u>Guidance for Industry: A Food Labeling Guide</u>, in October, 2009.  The FDA recited:

> **Away – From – Home Foods**
>
> **L114.  Is a manufacturer that produces institutional and restaurant foods required to provide nutrition information?**
>
> **Answer:**  Foods which are served or sold for use only in restaurants and other establishments in which food is served for immediate consumption are exempt from nutrition labeling.  <u>However, if there is a reasonable possibility that the product will be purchased directly by consumers (e.g. club stores), nutrition information is required.</u>  21 CFR 101.9(j)(2)(iii) and 21 CFR 101.9(j)(2)(iv)(B) (emphasis added)

22. Later, in 2013 the FDA provided an updated "Guide to Industry"[5] which was circulated to all grocery outlets. This was intended by the FDA to facilitate food sales companies to better comply with the law respecting the labeling of food products. Upon information and belief, Mitchell was provided said Guide for comment prior to implementation. Upon information and belief, Mitchell made no objection to same, thus, tacitly agreeing to abide by same. Full and complete instructions from the FDA Guide regarding Mitchell's legal requirements for the required labeling of the subject bakery goods follows:

(1.) **Where should label statements be placed on containers and packages?**

*Answer:* There are two ways to label packages and containers:

a. Place all required label statements on the front label panel (the principal display panel or PDP), or,

b. Place certain specified label statements on the PDP and other labeling on the information panel (the label panel immediately to the right of the PDP, as seen by the consumer facing the product).

21 CFR 101.1, 21 CFR 101.2, 21 CFR 101.3, 21 CFR 101.4, 21 CFR 101.5, 21 CFR 101.9, and 21 CFR 101.105

(2.) **What are the PDP and the alternate PDP?**

*Answer:* The PDP, is that portion of the package label that is most likely to be seen by the consumer at the time of purchase. Many containers are designed with two or more different surfaces that are suitable for display as the PDP. These are alternate PDPs. 21 CFR 101.1

(3.) **What label statements must appear on the PDP?**

---

[5] "Food Labeling Guide – Guidance for Industry", FDA; 1/2013.

*Answer:* Place the statement of identity, or name of the food, and the net quantity statement, or amount of product, on the PDP and on the alternate PDP.  21 CFR 101.3(a) and 21 CFR 101.5(a)

(4.) **Which label panel is the information panel?**

*Answer:*  The information panel is the label panel immediately to the right of the PDP, as displayed to the consumer.  If this panel is not usable, due to package design and construction, (e.g., folded flaps), then the information panel is the next label panel immediately to the right. 21 CFR 101.2(a), (which in the case of the subject bakery goods, should be on the reverse.  [Mitchell fails to do that] ).

23.  As stated above, the 2013, "Food Labeling Guide, Guidance to Industry,"  further clarified the issue relative to bakeries, making it crystal clear that unlabeled bakery items apply only in a restaurant-type facility, except in narrow circumstances:

**L118.  Could FDA provide additional guidance on what foods sold in delis and bakeries are exempt?**

**Answer:**  This exemption is based on 3 primary criteria: 1) when the food is consumed, 2) the location in which the food is processed and prepared, and 3) the extent to which the food is processed and prepared (i.e., must be ready-to-eat and of the type served in restaurants).

Bakeries and delis that sell foods for immediate consumption (e.g., where the deli or bakery has facilities for customers to sit and consume the food on the premises) are considered analogous to restaurants and all foods sold in such establishments are exempt under 21 CFR 101.9(j)(2) provided no claims are made.

When foods are not for immediate consumption, they may be exempt if they meet all the criteria listed in 21 CFR 101.9(j)(3). That is, when the food is ready-to-eat and is processed and prepared primarily on the premises of the establishment from which it is sold, it is exempt – regardless of how it is sold (i.e., from behind a counter or in pre-portioned packages from a self-service shelf).  **However, if the food is not primarily processed and prepared on-site, nutrition labeling is required.**  (emphasis added)

To meet the criteria for being "primarily processed and prepared on-site", the food must be augmented on site in a manner that changes the nutrient profile of the food (i.e.,

10

filling, icing, enrobing).  Washing and garnishing with nuts, onions or seeds would fall under the definition of "primarily processed and prepared" if the added foods change the nutrition profile of the finished product.  Custom cakes are exempt.

If pre-formed dough, pre-scaled/molded and par baked dough are merely proofed and baked or simply thawed, the product is considered to be "standardized" and nutrition labeling is required.

Foods which are not prepared on premises and that are portioned to consumer specifications on-site are not required to have nutrition labeling (e.g., 1 lb of potato salad; 2 lb cheese, 1 lb assorted cookies, 5 rolls).  However, if these items are packaged and offered for sale in another section of the store (e.g., refrigerator case; self-service bins), nutrition labeling is mandatory.  21 CFR 101.9(j)(3)(iv) (Defendant violates this directive also).

24.  Federal law and thus Alabama law leaves little room to argue against the importance that the FDA places on proper food labeling.  In fact and in law, by Mitchell not placing Nutrition Labeling on their bakery goods, FDA states that Mitchell is <u>misleading</u> consumers by marketing misbranded food.

### MISBRANDED FOOD

**SEC. 403.** [343] a food shall be deemed to be misbranded –

If any word, statement, or other information required by or under authority of this Act to appear on the label or labeling is not thereon with such conspicuousness (as compared with other words, statements, designs, or devices, in the labeling) and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

Section 403(a)(1) of the Federal Food, Drug, Cosmetic Act (FD&C Act) deems a food misbranded, if the labeling is false or misleading "in any particular."  What does "in any particular" mean?

"Misleading" covers not just false claims but also when ambiguity or inference [a label] create(s) a misleading impression."  <u>In addition, a label may be deemed misleading</u>

for what it fails to disclose.  That is, a label can be literally true but still be misleading when it does not disclose an important fact that is "material" to consumers. (emphasis added)

**FD&C Act § 201(n)**

(n)  If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the article to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.

25. Mitchell has ignored its federal labeling obligations while all other similar sales outlets like Mitchell use Nutrition Labeling on its bakery goods:

- Walmart – Attached as Exhibit H & I;

- Whole Foods – Attached as Exhibit J & K;

- Target – Attached as Exhibit L & M;

26. Additionally, nutrition labels are affixed to the bakery products in Baker's Piggly Wiggly, Fresh Market, Sams Club, Costco, Winn-Dixie and BJ's Wholesale Club and even third-party suppliers of bakery goods to Mitchell.

27. As reasonable consumers, Plaintiff and class members desire to purchase bakery products with the reasonable assumption that the subject goods comply with federal law and regulations; yet, Mitchell is guilty of misbranding said goods:

- so that such causes confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services;

- by representing that said goods have sponsorship, approval, characteristics,

ingredients, uses, benefits or qualities that they do not have;

- by representing that said goods are of a particular standard, quality or grade;

- by marketing said bakery goods in violation of law;

- by engaging in an unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce; and

- by impliedly representing said goods are of a quality that they are not.

28.   As stated above, FDA regulations require that grocery outlets market its bakery goods with required Nutrition Labeling and when it does not, such marketing is misleading the consumer, including Plaintiff and the class.  Plaintiff and the class paid the price for said bakery goods as required by Defendant only to receive less value than if legal Nutrition Labeling had been affixed.

## <u>CLASS ALLEGATIONS</u>

29.   Plaintiff individually, and for the Class, incorporate by reference all preceding paragraphs as though fully set forth herein.

30.   Plaintiff brings this case individually, and as a class action, pursuant to R. 23, Fed. R. Civ. Proc., on behalf of all persons who have incurred economic or statutory damages as a result of Defendant's sale and distribution of its said bakery goods.

31.   Plaintiff seeks to represent the following Class:

- **The Southern Class – All persons residing in Mississippi and Florida who purchased Food Giant's bakery goods that were sold without Nutrition Labels.**

- **Alabama Sub-Class -- All persons residing in the State of Alabama who purchased Food Giant's bakery goods that were not processed and prepared on site but were sold without Nutrition Labels.**

13

Excluded from the Classes are the following:

i.   Any and all state or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

ii.   Individuals, if any who timely opt out of this proceeding using the correct protocol for opting out;

iii.   Current or former employees of Food Giant;

iv.   Individuals, if any, who have previously settled or compromised claim(s) relating to Food Giant's bakery goods; and

v.   Any currently sitting federal judge and/or person within the third degree of consanguinity to any such judge.

32.  Plaintiff seeks to recover damages on a Class-wide basis for herself and the Class under Alabama's breach-of-warranty law and breach of implied agreement of good faith, as well as all other states' similar laws.

33.  Mitchell violated the rights of each Member of the Class in the same fashion based upon Defendant's uniform actions in its marketing, producing, selling, design and distributing of its bakery goods.

34. Plaintiff should be approved to maintain this action as a class action for the following reasons:

35. **Numerosity:**  Members of the Class are so numerous that individual joinder is impracticable.  The proposed Class contains thousands of Members.  The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible.

36. **Common Questions of Fact and Law Exist:**  Common questions of fact and law exist as to all Members of the Class, including whether Defendant marketed, designed,

produced and distributed the Product with its representations and implied and expressed warranties.

37. **Typicality:**  Plaintiff's claims are typical of the claims of the Class.  Mitchell's breach of its warranties and violations of federal food safety law affected and harmed Plaintiff and all Class Members alike.  Furthermore, Plaintiff and all Members of the Class sustained monetary and economic injuries arising out of Defendant's unlawful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class Members.

38. **Adequacy:**  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class – all seek redress and prevention for the same unlawful conduct.  Plaintiff has retained Counsel who is competent and highly experienced in complex class action litigation, and she intends to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.  Plaintiff's claims, like those of the Class, are antagonistic to Defendant.

39. **Predominance:**  Common questions of fact and law predominate over any questions affecting individual Class Members.

40. **Superiority:**  A class action is superior to other available means of fair and efficient adjudication.  The injury suffered by each individual Class Member is very small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be impossible for all Members of the Class to effectively redress the wrongs done to them on an individual basis.  Therefore, a class action is the only reasonable means by which Plaintiff and the Class may pursue their claims.  Moreover, even if the Members of the Class could pursue

such individual litigation, the court system could not.  Individualized litigation increases the delay and expense to all parties, and to the court system, by the complex legal and factual issues of this case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economics of scale, and comprehensive supervision by a single court.

41. Plaintiff brings this action for herself and on behalf of a class of individuals in the State of Alabama who have purchased said Mitchell's bakery goods.

## COUNT I

## BREACH OF CONTRACT

### (On Behalf of the Class and Subclass)

42.  Plaintiff adopts paragraphs 1. through 41. as if fully set out herein.

43.  Plaintiff and the class members entered into implied agreements with Mitchell.

44. The agreements provided that Plaintiff and the class members would pay Defendant for its bakery products.

45.  The contracts further provided that Defendant would provide Plaintiff and the class members subject bakery goods as required by law.

46. Plaintiff and the class members paid Defendant for the products that they purchased, and satisfied all other conditions of the agreements.

47.  Defendant breached the implied agreements with Plaintiff and the class members by failing to comply with the material terms of providing the bakery goods as required by law.

48. As a direct and proximate result of Defendant's breach, Plaintiff and the class members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT II

**BREACH OF WARRANTY**

**(On Behalf of the Class and the Alabama Subclass)**

49. Plaintiff adopts paragraphs 1. through 41. as if fully set forth herein.

50. Plaintiff and the class members formed contracts with Defendant at the time they purchased items from Defendant.  The terms of such contracts included implied promises and affirmations of fact by Defendant that said bakery goods were being marketed in compliance with applicable law.

51. The implication of said marketing is that a requirement of law became part of the basis of the bargain, and is part of the contracts between Defendant on the one hand and Plaintiff and the class members on the other hand.

52. The implied affirmation of fact and law made by Defendant was made to induce Plaintiff and the class members to purchase goods from Defendant.

53. Defendant intended that Plaintiff and the class members would rely on said affirmations in making their purchases, and Plaintiff and the class members did so.

54. All conditions precedent to Defendants' liability under these warranties have been fulfilled by Plaintiff and the class members in terms of paying for the goods at issue, or have been waived.  Defendant had actual and/or constructive notice of their own false marketing and sales practices but to date have taken no action to remedy their breaches of implied warranty.

55. Defendant breached the terms of the warranty because the items purchased by Plaintiffs and the class members did not conform to the implied affirmations of fact by Defendant – that they were being sold according to law.  In fact, they were not.

56. As a direct and proximate result of Defendant's breach of warranty, Plaintiff and

the class members have been injured and have suffered actual damages in an amount to be established at trial.

## COUNT III

**INJUNCTIVE RELIEF UNDER THE ALABAMA DECLARATORY JUDGMENT ACT**

**(On Behalf of the Plaintiff and the Class)**

57.  Plaintiff adopts paragraphs 1. through 41. as if fully set forth herein.

58. Plaintiff and the class need, and are entitled to, an order for injunctive and declaratory relief declaring that Defendant's advertising, marketing, and sales practice alleged herein violate federal and Alabama regulations, and enjoining Defendant from continuing such practices in their Mitchell stores.

59. Defendant is presently continuing each of these complained-of practices in their stores in Alabama, and upon information and belief in all its other stores in the United States.

60. Plaintiff and the class have a significant interest in this matter in that each has been, and will again in the future, be subjected to the unlawful policies and practices alleged herein.

61.  Indeed, Plaintiff is a frequent customer of Defendant's stores.  She consistently shops at Defendant's stores.  Further, Plaintiff routinely purchases merchandise from Defendant's stores, and is entitled to know whether the purported bakery goods will legally display its nutrition facts.  It is anticipated that members of the class continue their same shopping as well.  Until a change is required, Plaintiff and the class and all of Mitchell's shoppers will be regularly subjected to Defendant's unlawful conduct alleged herein and will be subject to such conduct in the future and otherwise.

62. Based on the foregoing, a justifiable controversy is presented in this case,

rendering declaratory judgment appropriate.

63.  In addition, because the unlawful uniform policies of Defendant continue, and are on-going, Plaintiff and the class also need, and are entitled to, an order for injunctive relief, enjoining Defendant from continuing these complained-of practices in their stores in Alabama and across the United States.

## COUNT IV

## UNJUST ENRICHMENT

### (On Behalf of the Plaintiff and the Class)

64.  Plaintiff adopts paragraphs 1. through 41. as if fully set forth herein.

65.  Plaintiff brings this claim individually and on behalf of the classes.

66.  To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

67.  Plaintiff and Class Members conferred benefits on Defendant by Purchasing the product.

68.  Defendant was unjustly enriched in retaining the revenues derived from Plaintiff and Class Members' purchases of the product.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant failed to disclose that the product was unfit for its intended purpose.  These omissions caused damage to Plaintiff and Class Members because they would not have purchased the Products if the true facts were known.

69.  Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

70.  Here, equitable relief is appropriate because Plaintiff may lack an adequate

remedy at law, if, for instance damages resulting from the purchases of the products are determined to be an amount less than the appropriate price of the products. Without compensation for the full premium price of the products, Plaintiff and the Class would be left without the party in purchasing power to which they are entitled.

71. Restitution may also be more certain, prompt, and efficient than other legal remedies requested herein. The return of the difference in the appropriate price versus the paid price will ensure that Plaintiff and the Classes are in the same place they would have been had Defendant's wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of the products absent omissions and misrepresentations with the full purchase price at their disposal.

## COUNT IV

## NEGLIGENCE PER SE

### (On Behalf of the Plaintiff and the Class)

72. Plaintiff adopts paragraphs 1. through 41. as if fully set forth herein.

73. Plaintiff alternatively claim that Defendant in a negligent manner marketed and sold to the class the product heretofore mentioned.

74. Plaintiff claims that said marketing of the product without regard to the legal requirements, was done and is presently continuing in a negligent manner and as a proximate result thereof, the Plaintiffs and the class were damaged as herein claimed.

75. Plaintiff further allege that said marketing of Defendant's product is violative of Alabama and federal legal requirements. Therefore, Defendant is guilty of the Plaintiffs' claims herein and should be restrained and be caused to cease; that said actions by Defendant is negligence per se by violating statutes controlling same.

76. Plaintiff prays that due to the damage proximately caused by Defendant to Plaintiff

and the class that relief is demanded as hereinafter requested.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this case be certified and maintained as a class action and that judgment be entered in favor of Plaintiff and the class against Defendant as follows:

A. Enter an order certifying the proposed class, designating Plaintiff as the representative for the class and subclass that she seeks to represent, and designating the undersigned as class counsel;

B. Declare that Defendant is financially responsible for notifying all class members of Defendant's misleading sales and marketing practices alleged herein;

C. Find that Defendant's conduct alleged herein be adjudged and decreed in violation of applicable Alabama and federal laws;

D. Grant injunctive and declaratory relief to end the challenged conduct;

E. Grant economic and compensatory damages on behalf of Plaintiff and all members of the class, to the maximum extent permitted by applicable law;

F. Grant statutory, punitive, and/or exemplary damages as permitted by law;

G. Award interest as permitted by law;

H. Grant reasonable attorneys' fees pursuant to law and as otherwise permitted by statute, with reimbursement of all costs incurred in the prosecution of this action; and

I. Grant such other relief as this Court deems just and proper.

Respectfully submitted,

BY:    */s/ Charles M. Thompson*
Charles M. Thompson, Esq. THO019
ASB-6966-P77C
101 Mohawk Drive
Trussville, AL 35173
(205) 995-0068
Fax (866) 610-1650
Email: cmtlaw@aol.com

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

*/s/ Charles M. Thompson*
Charles M. Thompson
Attorney for Plaintiff

**SERVE DEFENDANT via certified mail at this address:**

**Mitchell Grocery Corp.**
550 Railroad Avenue
Albertville, AL 35950